## STATE, ex rel. BOARD OF EDUCATION OF COLUMBUS, Relator, v. DUNN, County Auditor, Respondent.

Common Pleas Court, Franklin County.

No. 202718. Decided November 29, 1958.

William Saxbe, Attorney General.
Russel Leach, City Attorney.
Earl Allison, Asst. Prosecuting Attorney.

## OPINION

By SATER, J.

Relator has brought its petition in mandamus. It alleges that on June 25, 1956, a majority of the adult resident freeholders in a portion of Jefferson and Truro Townships of Franklin County petitioned the Board of County Commissioners of that county for annexation of that territory to the City of Columbus. The Board duly approved this petition on October 5, 1956, and on June 3, 1957, the Council of the City of Columbus by ordinance duly accepted the annexation of that territory; by reason of the foregoing, that territory became and constituted a part of the City of Columbus and also of the Columbus City School District. The petition further alleges that despite the foregoing, respondent Auditor has failed and refused, and still fails and refuses, to list the real property within that territory for taxation within the said Columbus City School District and to certify to the Franklin County Treasurer for collection the levies of relator Board upon such property, in that

territory, as a result of which nonfeasance relator has suffered and will continue to suffer irreparable loss of tax revenue, and, for this, it has no adequate remedy at law. The prayer is for an alternative writ and, in due course, for a final writ requiring respondent Auditor to list such property in that territory for taxation within the relator District and to certify to the Franklin County Treasurer for collection relator Board's levies upon such property in that territory.

Following the granting of an alternative writ by this Court, respondent Auditor demurred to the petition on the ground that it does not set forth facts sufficient to constitute a cause of action. Soon thereafter, the Ohio State Board of Education was granted leave to intervene as a party respondent, and in the course of a few days it, too, demurred on the ground that the petition does not state facts sufficient to constitute a cause of action. Since neither respondent raised the question of sufficiency or lack of parties relator or respondent, we may take it that for the purpose of this proceeding, all parties are before the Court necessary to a ruling on the factual sufficiency of the petition. As to parties relator, see **State, ex rel. Spiker v. Commission, 141 Oh St 174;** as to parties respondent, further meritorious joinder in view of what follows herein is difficult to imagine. Let it further be noted that neither party respondent chose to controvert by answering any of the allegations of the petition, or to modify them in any way. See **High School Board of Education v. Board of Education, 96 Oh Ap 429, 435.**

That the factual situation may be clearly before the reader to aid his understanding of the ruling that is to follow, it is well to point out here that the parties have agreed for the benefit of the Court on two matters; (1) The territory involved by annexation herein, consisting of about 620 acres, is contiguous to the eastern limits of the City of Columbus, is roughly rectangular in shape and lies astride the Jefferson-Truro Township's line with the larger segment being in Jefferson Township on the north and the remainder in Truro Township on the south. The territory constitutes only a small part of either Jefferson Township School District or of the Reynoldsburg School District of Truro Township. Within this territory and on running south from the Jefferson-Truro line is a tract of about eight acres, the owner of which refused to enter the Columbus City School District; thus this tract is (a) in and a part of the Reynoldsburg School District of Truro Township, although isolated from it and from the Jefferson Township School District, is (b) in and a part of the City of Columbus for all except school purposes, and is (c) in and a part of Franklin County. There is no indication whether any one of school age resides on that eight-acre tract. (2) The Court may consider as though offered in evidence the two exhibits, A and B, attached to relator's answer brief to the demurrer of respondent Auditor. Exhibit A is the "Policy Guide Relative To Transfer of Territory For School Purposes Pursuant To A Municipal Annexation" which is dated September 16, 1957, and was passed by respondent State Board on September 9, 1957, three months after the annexation in question had been completed. Exhibit B is a tabulation showing the present mandate tax rates, in mills, on the eight-acre tract referred to above, the downward proration necessary to bring these rates within

the 10-mill limit, and the resultant dollar loss that such proration will bring to County. School District and City if the status quo continues. It reads as follows:

|  | Mandated Rates |
|---|---|
| Franklin County | 2.35 |
| Reynoldsburg S. D. | 6.40 |
| Columbus | 3.14 |
|  | 11.89 |

10 mills divided by 11.89 = 0.8410428 mills

| | | |
|---|---|---|
| Franklin County | 0.8410428 x 2.35 = 1.9764 | 2.00 |
| Columbus | 0.8410428 x 3.14 = 2.6409 | 2.60 |
| | 10.000 Mills | 10.00 |

Loss based on present estimated Tax Duplicate - -

| | Man Rate | Adjusted Loss Millage | Loss Millage | Estimated Valuation | Loss In Dollars |
|---|---|---|---|---|---|
| Franklin County | 2.35 | 2.00 | 0.35 | $1,542,762,610 | $ 539,967 |
| Reynoldsburgh S. D. | 6.40 | 5.40 | 1.00 | 8,838.930 | 8.839 |
| Columbus | 3.14 | 2.60 | 0.54 | 1,017,814,360 | 549,620 |
| | 11.89 | 10.00 | 1.89 | | $1,098.426 |

As to the eight-acre tract, the first of these three tabulations shows in mills the mandated tax rates of each of the three subdivisions wherein, as noted above, it is located. The second tabulation shows how the three rates must be prorated downward in order to meet the 10-mill maximum. The third tabulation shows the loss in dollars to the three subdivisions from the proration which must take place if the status quo continues; the dollar loss column on the right represents the estimated valuation times mandated rate in the first column less the estimated valuation times the adjusted rate in the second column. Also, let it be noted that the mandated rate for relator School District is not set out because it is not affected by this proceeding, at least at this moment.

We now pass to a consideration of the matters raised by the demurrers, bearing in mind that factually we have a 360-acre annexed territory contiguous to the City of Columbus lying in two townships each of which for the purpose of this case, has its own school district covering its share of that territory; and in its southern segment, Truro Township, there is an eight-acre tract that is not a part of relator School District, i. e., it is an island fronted on the north by Jefferson Township with its school district, is situated in Truro Township, and is also surrounded in the west, east and south by the Reynoldsburg School District which is a part of Truro Township.

Two portions of the **Ohio Constitution** relate to the matter at hand. **Section 4, Article VI,** states that:

"There shall be a state board of education which shall be selected in such manner and for such terms as shall be provided by law. There shall be a superintendent of public instruction, who shall be appointed

by the state board of education. The respective powers and duties of the board and of the superintendent shall be prescribed by law."

The other is the first, and for our present purpose, the only relevant, clause of **Section 2, Article XII, Ohio Constitution:**

"No property, taxed according to value, shall be so taxed in excess of one percent of its true value in money for all state and local purposes, * * *"

**Article II, Section 26, Ohio Constitution,** may also be apposite and should therefore be set out:

"All laws, of a general nature, shall have uniform operation throughout the State; nor, shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the General Assembly, except, as otherwise provided in this constitution."

Pursuant to section 3 of Article VI which need not be quoted here in full, the General Assembly by a succession of enactments over the decades, made due legislative provision for the creation and functioning of city, village, township and county school districts and boards of education. Pages 1499-1504, 1914-1918 and 1928-1933 of volume II of the Proceedings of the Constitutional Convention of 1912 show the deep concern for local control of local school matters. Sometime later, the General Assembly created the State Board of Education of Ohio, the intervening respondent herein. To give added authority to respondent, the General Assembly enacted what is now §3311.06 R. C., which reads as follows:

"The territory included within the boundaries of a city, local, exempted village, or joint vocational school district shall be contiguous except where a natural island forms an integral part of the district.

"When territory is annexed to a city or village, such territory thereby becomes a part of the city school district or the school district of which the village is a part, and the legal title to school property in such territory for school purposes shall be vested in the board of education of the city school district or the school district of which the village is a part; provided, that when the territory so annexed to a city or village comprises part but not all of the territory of a school district, the said territory shall become a part of the said city school district or the school district of which the village is a part only upon approval by the state board of education. In event territory is transferred from one school district to another under this section, an equitable division of the funds and indebtedness between the districts involved shall be made under the supervision of the state board of education and that board's decision shall be final. After the effective date of this section, no action with regard to the transfer of school district territory pursuant to annexation to a municipality shall be completed in any other manner than that prescribed by this section."

This is not a new statute but its last sentence and the clause,

"provided, that when the territory so annexed to a city or village comprises part but not all of the territory of a school district, the said territory shall become a part of the city school district or the school district of which the village is a part only upon approval by the state board of education,"

were passed June 20, 1955, and became first effective on September 9, 1955.

The last sentence just referred to provides that,

"After the effective date of this section, no action with regard to the transfer of school district territory pursuant to annexation to a municipality shall be completed in any other manner than that prescribed by this section."

Since their enactment, these two amendments have created such legal uncertainty among all affected political and educational agencies and subdivisions and have caused such harrassment of the statutory legal advisors of those agencies and subdivisions that they approach unwarrantedly close to Herbert Hoover's apt phrase "an experiment noble in purpose." But in obvious recognition that nobility alone does not constitute here constitutional clearance, all counsel have furnished the Court with full briefs ably and cogently aimed at guiding us properly through the labyrinths of these amendments as they impinge upon other statutes and upon their foundation in the Ohio Constitution. These briefs turned, pro or con, on the three issues felt to be involved: (1) the unwarranted and unconstitutional delegation, especially without statutory rules, standards, guidance or limitation, of legislative power by the General Assembly to respondent State Board,—in many respects a blanket delegation of the power of absolute veto over the acts and wishes of any subordinate governmental body or citizens group, (2) the possible future proliferation of small, independent school boards and districts all incidental to annexations by expanding municipalities and often without regard to either economic or educational ability to function properly, and (3) the impact of **Section 2, Article XII, Ohio Constitution,** as quoted above.

Consideration of the first of these three issues is presently needless, not only because what may therein be unconstitutional in one situation may conceivably be proper in another, but also because, primarily, any such delegation, even if made must ultimately stand or fall on the constitutional power of the General Assembly to make any such delegation. Furthermore, consideration of the second of these issues, especially since it does not exist herein at this time, should be deferred until actual need for consideration arises. In turning, then, to the third issue. we will shortly review the relevant constitutional principles, even at the risk of being elementary in the process.

The government has only such sovereign power as the people have conferred upon it. Any prerogatives that the state may have come only from the sovereign power of the people and must be looked for in the grant of powers expressed in the Constitution itself. These powers cannot be enlarged by the repository of the delegated authority; otherwise the Constitution would be made more than it was when it came from the people's hands, changed, if not actually subverted without the author's consent. So set down, the Ohio Constitution is the primary and paramount law, prevailing over statutes repugnant to it. No exigency can arise great enough to justify a violation of the provisions of the Constitution; what the Constitution grants, no statute may take

108

away; where the Constitution speaks, statutes should remain silent. And courts may declare legislation void when the General Assembly has exceeded its power; yet in this process, where the validity of an act is assailed, and there are two possible interpretations, one of which would render it valid and the other invalid, the Court will adopt the former so as to bring the act into harmony with the Constitution. **10 O. Jur. 2d, 278-279, 176, 189, 242, Youngstown v. Fishel, 89 Oh St 247, 255, State, ex rel. Columbus v. Ketterer, 127 Oh St 483, 495, Russian Fleet v. U. S., 282, U. S. 481, 492, 75 L. Ed. 473, 478, N. L. R. B. v. Steel Corp., 30 U. S. 1, 30, 81 L. ed. 893, 908, Rose Institute v. Myers, 42 Oh St 483.** It is settled that a constitutional question will not be decided until the necessity arises on the record before the Court. **Belden v. Ins. Co., 143 Oh St 329, Cancer Society v. Dayton, 160 Oh St 114, 125;** but that necessity exists here both because the issue of multiple new school districts is not dispositive of this case and also because the effect of delegation of legislative powers and of rule making activities are the tail that go with the hide of underlying statutory constitutionality.

We are not confronted here with the irreconcilibility of two statutes as was the case in **State, ex rel. Guilbert v. Halliday, 63 Oh St 165,** nor with judicial compulsion to elect between two or three equally proper and constitutional courses of action as in **State, ex rel. Masters, v. Beamer, 109 Oh St 133.** But we are confronted with the principle that before a statute may be declared unconstitutional, it must be clearly in conflict with some provision of the Constitution. **Miami County v. Dayton, 92 Oh St 215, 222.** That conflict is here present.

We are confronted with a statute which, with its recent amendments, is a clear execution of **Section 4, Article VI, Ohio Constitution,** which reasonably comports with **Section 3** of the same Article and which (though it is a question not here in issue) does not present violence to **Section 26, Article II, Ohio Constitution;** but which on the agreed factual picture of Exhibit B, quoted above, is a patent, irreconcilable violation here of the first clause of **Section 2, Article XII, Ohio Constitution,** also quoted above, **insofar as it creates, permits, or allows to continue in existence, a mandated tax rate of more than ten mills,** here 11.89. The appearances of respondents Dunn and the State Board in this case in this Court are general. Even the Attorney General candidly agrees on page 5 of his brief that relator (city) Board of Education is a proper party to maintain this action. Yet we have here, also, an eight-acre tract in Franklin County, in the Reynoldsburg School District and in the City of Columbus with a resultant mandated tax rate that is unconstitutional so far as it exceeds ten mills. Opinion No. 7421 of the Attorney General, cited 1956 O. A. G., 813, provides that in such a situation all mandated levies be prorated downward until they then total no more than ten mills. This seems to us to be as proper as it is necessary a solution; and all necessary parties are before the Court to accomplish that result. In discussing that opinion in his brief here, the Attorney General again candidly, and accurately, stated that he "was faced with a direct and irreconcilable conflict between the constitution and a particular statute, and he held logically

that at that point of direct conflict the former must prevail." We accept that statement for the purposes of this case as being sound in logic and law; further, what applies to one phase of the public education program through §5705.31 R. C., applies with equal force to a complementary phase of the same program through §3311.06 R. C., as amended.

The irony of our situation lies in the application of this principle of proration, as the sole acceptable alternative to patent unconstitutionality, to the facts of our case. Thus: our eight-acre tract with its 11.89 mandated tax rate lies within the three separate taxing districts listed above. Also, a subsequent sentence of **Section 2, Article XII, Ohio Constitution**, requires that a tax levy be uniform throughout the entire taxing district. There is no blinking the fact that the necessary and unavoidable proration for the benefit of the eight acres lowers the millage for all of Franklin County by 0.35 mills, the millage for all of the Reynoldsburg School District by 1.0 mills and the millage for the entire City of Columbus by 0.54 mills. What tabulation No. 3, above, shows this to mean dollarwise is of as little import as is our comment that the foregoing is a perfect illustration of three taxing districts being wagged by their constitutional tail; what is important is that when the Constitution speaks, statutes are silent whether it be mills or dollars. What is important is that here, the seeming discretion of respondent State Board may be lawfully and constitutionally be exercised in only one direction; under such circumstances, relator demand of the respondent State Board is as pure a formality as is the action of that Board itself. No order of this Court in such a situation can impede or improperly compel exercise of administrative discretion; there is none.

Nor must we await injunctive action by the resident owner of the eight-acre tract. If our Court may note in **Matz v. Cartage Co., 132 Oh St 271, 286,** that "The Legislature is not always in session * * *," so here may we note that injunctive relief is not always sought regardless of the righteousness and certainty of the cause. Of equal if not greater significance is a factual situation which no legislature could reasonably have been expected to foresee; yet again, "The Legislature is not always in session," nor are its future enactments always capable of correct or even approximate anticipation.

The foregoing leaves §3311.06 R. C., pro tanto constitutional for the purposes of this case. It strikes down only the use of any portion thereof which creates or allows the continuance of an unconstitutional result. There is ample authority for this especially because it follows our Ohio Constitution without placing subdivisional "grab" above educational individuality in situations such as are found here.

Mandamus is the proper remedy for the situation confronting us. **Fischer v. Damm, 36 Oh Ap 515, State, ex rel. Bruml, v. Brooklyn, 126 Oh St 459; State, ex rel. Selected Properties v. Gottfried, 136 Oh St 469, 475, High School Board v. Board of Education, 96 Oh Ap 429, State, ex rel. Bridge Com. v. Griffith, 136 Oh St 334, Neff v. County Commissioners, 166 Oh St 360.** In and by virtue of §3311.06 R. C., respondent State Board is given as absolute and unfettered a discretion to accept or reject an act of annexation as one might readily imagine. Yet that discretion must fall within the ambit of **Section 2, Article XII,** as well as

Section 4, Article VI, Ohio Constitution, both quoted above. Here there is neither room nor place for utilization of discretion. It is simply non-existent until the ten mill maximum, or less, is reached. We consequently need presently consider neither the "Policy Guide" of respondent Board of Education nor the propriety or the extent of the powers statutorily delegated to respondent Board; consideration of each of them may await appropriate future challenge since their propriety here coincides with that of the statute which gave them birth. This is a situation which completely distinguishes **In the Matter of the Adoption of Uniform Rules and Regulations**, No. 5947, 80 Abs 129, decided by our own Court of Appeals last month.

We acknowledge the sixth syllabus of Belden v. Ins. Co., supra, that he who claims a statute is unconstitutional under a given set of facts must prove it so, but we find that such proof is amply present. The constitutionality of a law, however, may be determined by its operative effect though on its face it may be apparently valid; though proper and valid when passed, its future operations may directly contravene the organic law. **Castle v. Mason, 91 Oh St 296,** State, ex rel. Columbus v. Ketterer, supra, Ry. v. Walters, 294 U. S., 405, 415, 79 L. ed. 949, 955. Though it is a canon of construction that statutory enactments are passed with reference to the provisions of the existing constitution and are to be interpreted, if possible, in accordance therewith, it is not unknown to find a statute valid under one article of the constitution, yet void under another. **State, ex rel. Shaffer, v. Otter, 106 Oh St 415, 420.** This principle was recognized and approved by the statement that "The question of constitutionality must be determined in the light of the Constitution in its entirety" found on **page 282** of **Board of Elections v. State, ex rel., etc., 128 Oh St 273.** As noted above, if a statute is susceptible of two constructions, one making it constitutional and the other unconstitutional, it is the duty of the court (as we have done here) to adopt the former construction and to restrict the operation of the statute within constitutional limits. N. L. R. B. v. Steel Corp., and Russian Fleet v. U. S., both cited above; and also New American Library v. Allen, 114 Fed. Supp. (Ohio), 823, syll. 7. Here, as in Ry. v. Walters, supra, we find that a statute valid on one set of facts may be invalid on another. Porter v. Investors Syndicate, 286 U. S. 461, 470, 76 L. ed., 1226, 1231-32, holds that if possible a statute should be so construed as to avoid unconstitutionality. This we have here done.

In passing, the remedy proposed by the attorney general for the financial difficulties of the subdivisions revealed in this case is for the General Assembly to provide; yet by the Matz case, supra, upon which he elsewhere relied, "The legislature is not always in session * * *," a situation which is true here and now. Yet there are present in this case all parties needful to a prompt disposition of those financial difficulties if they are material to a prompt determination and lawful disposition of the case—the respondent State Board which for one reason or another, be it lack of request, uncertainty of power, reluctance to act, or whatnot, has done nothing for more than a year, even though it had here no constitutional choice over its course of action; and respondent Dunn who should be able to move promptly under the circumstances

though ordinarily his function would be purely ministerial in conjunction with some prior administrative act for which here this decision and ensuing entry shall perforce substitute. And agreedly we have a proper relator.

Nor can the Attorney General be overly happy in his official capacity and duty in defending a statute and a client in the face of Section 2, Article XII, supra. His opinion No. 1472 cited also above and written in 1956, is followed by two later opinions to the same respondent State Board concerning its powers, its functions and their lawful proper use. In the first, No. 1308, dated November 19, 1957, relating to the vexities of territorial contiguity, we find this paragraph.

"Where any action is taken by the board, relative to changes in the boundaries of school districts, that involves very considerable tax losses to other subdivisions which share these revenues, and where there is no showing that the efficiency of the schools in either district compellingly requires such losses to such other subdivisions, a very serious question is raised whether the board is not, in bringing about such tax revenue losses, abusing its discretion in the matter; and if the validity of the board's action should be challenged in litigation, I should not relish the task of defending its action in such a situation."

A month later, December 20, 1957, Opinion No. 1452 closed with the following:

"In my Opinion No. 1308, supra, I stated that I should not relish the task of defending the board's action in bringing about the million dollar tax revenue loss therein described in a case where the welfare of the schools involved did not compellingly require such loss.

"In the instant case, I shall be equally candid. I should relish even less having the board, by delaying action beyond January 1, 1958, make what is in effect a wager of one million dollars of the city and county revenues that the conclusions I have expressed above are correct. Accordingly, I suggest that the conservative course is to avoid the possibility of such loss of revenues by action in the pending case prior to January 1, 1958."

We respect the Attorney General's candor and insight into the impossible choice between action resulting in unconstitutional rate or non-action resulting in a million dollar loss.

The demurrers of both respondents are overruled. Exceptions noted. Submit entry.