Warren Sanitary Milk Company, Appellant, *v.* Board of Review, Bureau of Unemployment Compensation et, Appellees.

Common Pleas Court, Trumbull County.

No. 69872. Decided September 16, 1961.

196

*Messrs. Hoppe, Day & Ford,* for appellant.

*Mr. Mark McElroy,* attorney general, by *Mr. Daniel T. Lehigh,* assistant attorney general, for appellees.

*Messrs. Clayman & Clayman,* for Amicus Curiae.

(FRANCE, J., of Portage County, sitting by assignment in Trumbull County.)

FRANCE, J. This matter comes on appeal from decision of the Board of Review, Bureau of Unemployment Compensation,

entered August 11, 1960, denying application by appellant herein to institute a further appeal from the decision of its referee, Wilson E. Best, dated May 5, 1960.

So far as they are necessary to this decision the facts are agreed and may be stated as follows:

On December 14, 1959, some employees of appellant, including six whose claims for benefit give rise to this appeal, went on strike for the purpose of organizing the employees. Within a week many of the strikers had returned to work and the picket line was withdrawn on December 21, 1959; the six claimants to compensation contended that the strike ended December 23, 1959, and they were not continued in the firm's employ; appellant contends the labor dispute lasted several weeks longer. The determination of this factual question is not before the court in this proceeding.

The six claimants applied for compensation for the week ending December 26. The administrator allowed the application for determination of benefit rights on January 13, 1960, but disallowed the claim for benefits under the provisions of Section 4141.29 (D) (1) (d), Revised Code, for the reason that the claimants became unemployed at the appellant's plant by reason of a labor dispute then in progress. The determination became final as to this particular week because no request for reconsideration was filed by claimants within the statutory period.

Thereafter claimants continued to file claims for benefits at weekly intervals for the successive weeks ending February 20, 1960. The Administrator of Unemployment Compensation disallowed these claims for the same reason, finding that the labor dispute continued through February 19, 1960. This determination was made March 1, 1960.

On March 3, the claimants filed request for reconsideration. Appellant employer was given notice of this application by claimant's Form BUC 417R containing the recitation:

"The new determination will be issued based on the available information and a copy will be mailed to you."

On March 17, the administrator issued his reconsideration decision affirming the March 1 determination disallowing the compensation claims. (Whether or not appellant employer was

notified of the determination does not appear from the record, although the provisions of Section 4141.78 (b), Revised Code, require sending such notice to the "interested parties" and such notice was, in effect, promised by previous mailing to appellant.)

On March 21, claimants filed notice of appeal from the administrator's re-consideration determination. The hearing was scheduled for hearing before a referee of the Board of Review on May 2, 1960, and claimants were notified of time and place of hearing. Appellant employer was not so notified.

All claimants appeared, with counsel, in the absence of the unnotified appellant employer and after the hearing the referee on May 5, 1960 made his decision, reversing the administrator's re-determination and allowing claimants' claims for the weeks for which they were filed. No notice of this decision was given by the Board of Review to the appellant employer, who first heard of it obliquely on receiving the next monthly notice of benefits charged to his account as required by Section 4141.24, Revised Code. He promptly filed exceptions to the charge and on July 5, 1960, received a ruling from the administrator to which was attached the referee's ruling referred to above more than two months after it was made.

On receiving the referee's ruling, although it came from the hand of the administrator and not from the Board whose creature the referee was, the employer filed application to institute further appeal on July 13, 1960. The Board, with tremendous speed, on the following day gave it "due consideration," and ruled that appellant employer was not an interested party and not entitled to notice or opportunity to be heard (letter July 14, 1960) but much later (August 11, 1960) issued a formal decision dismissing the application (which for unknown reasons it brands as a "purported application") for want of jurisdiction.

It is the lawfulness and reasonableness of this last order which is attacked by this appeal.

The statutory right of the appellant employer to institute a further appeal from the referee's decision rests entirely on whether he is an interested party (and the very jurisdiction of the referee to make the decision sought to be appealed from

rests on the same question). If he is an interested party, the appellee Board of Review was compelled to review the referee's decision and to affirm, modify or reverse it on the merits, and its order dismissing for want of jurisdiction was clearly both unreasonable and unlawful. Similarly, if the appellant employer was an interested party, the referee was without jurisdiction to make the very decision on the merits which was sought to be complained of.

Initially it would appear that appellant-employer would have the highest sort of interest in the matter since not only did the allowance of the claim of benefits operate to increase his required contribution to the state unemployment insurance fund but, if his contention, vehemently asserted at every state of the proceeding to which he had access, is correct this same money was in effect financing the strike against him. However the term "interested party" is not left to ordinary and logical definition; it has been defined by Section 4141.01 (I), Revised Code, as follows:

"(I) 'Interested party,' with respect to any application for determination of benefit rights under Sections 4141.01 to 4141.46, inclusive, Revised Code, means the claimant, any employer in such claimant's base period, and the administrator. With respect to the determination of any 'claim for benefits,' as defined in division (E) of this section, such term means the claimant and the administrator, provided, if such determination is with respect to the first claim for benefits, or an 'additional claim' as defined in division (F) of this section, then such term also includes claimant's most recent employer."

The first sentence of the definition does not concern us since benefit rights had been determined as of January 13, 1959, and no appeal was had with respect thereto. Was the claim either first claim or an additional claim?

An additional claim is defined by Section 4141.01 (F), Revised Code, as

"(F) 'Additional claim' means the first claim for benefits filed following any separation from employment during a benefit year."

Appellant strenuously contends that the claim in question is an additional claim because Section 4141.01 (F), Revised

Code, uses the term "following separation from employment," whereas the term which forbids payment during a labor dispute uses the term "unemployment due to labor dispute." From this he argues that as of the time of the application in question there was as yet, no "separation from employment." Actually there is no significance in the different language since the one term relates to general eligibility and the other to a specific disqualification by way of condition subsequent after general eligibility is established. Furthermore the argument is self-defeating for, if followed to its logical conclusion, the appellant eliminates itself as an "interested party" under the statute. For so long as a strike lasts under this theory (and it is appellant's contention that it lasted long after the claims in question were filed) there would be no separation from employment and consequently no additional claim which make him an interested party.

In support of his contention that he is an interested party because the claim is an additional claim as defined in the act, appellant argues further that the "benefit year" had not begun for the claimant previous to the week for which the claim was filed inasmuch as the previous week's claim to benefits had been disallowed; and that the claim in question was therefore the first claim filed in a benefit year. This does not follow, for the "benefit year" is not established by the validity of the claim for weekly benefits for any given week. In this case it was established by the unappealed from decision of the administrator entered January 13, 1960, establishing and allowing claimants' applications for determination of benefit rights as of December 24, 1959. (Record—Administrator's file, p. 4.)

Finally appellant argues that any construction of the act which denies it notice and opportunity to be heard on the allowance of the employee's claims to benefits deprives it of property without due process of law. Its theory is that benefits paid are charged to its account; that its compulsory contribution to the fund varies according to the benefit-charged experience; and that the allowance of the claim, in effect, determines its contribution rate. Therefore it is entitled in accordance with procedural due process to notice and hearing on that grant of benefits which increases its "tax." That notice and

opportunity to be heard are fundamentals of procedural due process is so basic a proposition as scarcely to require citation of authority. See 11 Ohio Jurisprudence (2d), 720, and cases therein cited. But the Board of Review does not condescend to meet this argument. (Indeed it required several weeks of effort by this court to persuade the assistant Attorney General assigned to the matter to file brief at all, and the brief finally submitted was received two days after the third deadline set by the Court.)

The brief of Counsel for the Ohio AFL-CIO, submitted amicus curiae in support of the Board's position, does however respond to the contentions of unconstitutionality. Admitting, for practical purposes, that appellant's compulsory contribution would likely be increased by the allowance of the claims in question, and that it therefore is constitutionally entitled to notice and hearing, amicus curiae argues that appellant (or any employer) can challenge liability to increased premiums under Section 4141.26, Revised Code, and be given opportunity for hearing on this challenge. The Court notes, in addition, that the employer has an even earlier opportunity to dispute the rate, by filing exception to the charge of benefits to his account under Section 4141.24 (D), Revised Code, and that this was actually done in the instant case to no avail. If the hearings granted in such cases are fair hearings, and the employer gets seasonable notice so that he may avail himself of the opportunity to protest the rates (which admittedly he does) then he has no valid constitutional objection to the lack of notice and opportunity to be heard on his former employee's claim, for it is only the increased premium which gives rise to his claim of lack of due process.

These methods which give opportunity to challenge the charge of previously awarded benefits to an employer's account share one infirmity: They set each of the parties interested in the claim before the same forum, on the same facts, at different times. The claimant appears, necessarily first, his claim is established; then the employer at a later time must appear, and to establish his contention, must disprove the same facts already judicially determined by that same forum in his absence. This is not only undesirable circuity of action; it is an invitation to collateral attack; in fact it requires collateral at-

tack. Such a theory, while abhorred by the courts, may be constitutionally sound, provided the employer can get a fair hearing in his day before the forum. Can he?!

The single case cited to support amicus curiae's position that the second proceeding is an adequate substitute for notice and hearing in the first, namely *Horsman Dolls* v. *Unemployment Compensation Commission*, 7 N. J., 541, 82 Atl. (2d), 177, actually stands for a different proposition entirely consistent with appellant's argument. The proposition is that an employer who receives notice of the unemployment claim, is invited to defend against it and thereafter does nothing to assert his rights in the first proceeding, is thereby estopped in the second to claim that failure of the agency to send further notices violates procedural due process.

But that is not the situation in the instant case. Here the quasi-judicial body has made a determination of a particular fact at the instance of one party. Is it unprejudiced when it is asked at the instance of another to make a subsequent and precisely opposite determination of the same fact, and to have the two contradictory determinations of the same fact lie side by side in the administrative agency, both being recorded as final determinations? Human nature and the desire for consistency being what it is, the Court cannot conceive of even an administrative agency which would not desire, for the record, to have the two determinations consistent with each other. Thus the employer, in the second hearing, confronts a tribunal which has, in fact, prejudged the ultimate fact in issue, and is thus predisposed to disallow his contention. This is not a fair hearing by any standard of due process. See *Smith* v. *Mayfield Heights*, 99 Ohio App., 501, 124 N. E. (2d), 761; *Morgan* v. *U. S.*, 298 U. S., 468; 80 L. Ed., 1288; *National Labor Relations Board* v. *Phelps*, 136 F. (2nd), 562. And since it is not a fair hearing it is not the adequate substitute for notice and opportunity to be heard in the first proceeding, as claimed. Therefore any interpretation of Section 4141.28 (D & J), Revised Code, which deprives the employer of notice and opportunity to be heard on the employee's claim for benefits would render the act unconstitutional.

Is such an interpretation necessary? The most recent employer is an "interested party" with respect to the first claim

for benefits as well as for an "additional claim" Section 4141.01 (I), Revised Code. Does the word "first" mean merely the first claim arising, or the first claim *filed* with the particular agency (see Section 4141.01 (F), Revised Code), or the first claim which reaches the particular tribunal considering it, or does it mean the first claim ultimately allowed?

The Board of Review obviously has taken the postion that "first" means "first to arise." In fact its opinion accompanying the order in question does not acknowledge a separate identity of any subsequent claim but characterizes anything after the first claim presented as a "continuing claim." This is a form of bureaucrateese which the Court is wholly unable to understand, since the unemployment compensation act carefully makes each and every weekly claim a separate entity and requires each to stand on its own feet; each must be separately filled out at a different time, separately applied for, separately documented, allowed or rejected. This claim that "first" means "first to arise" is scarcely illogical until not only the requirements of due process but the administrative procedures created for the Bureau are considered.

As a matter of constitutional due proces, so long as chronology alone is considered, an unscrupulous or disgruntled ex-employee could always defeat an employer's right to notice and hearing by presenting a completely fictitious claim antedating the real claim. This would be equally true if he merely *filed* the fictitious claim first for the sole purpose of eliminating notice to the employer on the real claim. In addition, the structure of claim presentation is such that chronology of occurrence and chronology of filing is an unworkable basis for determining the "first" claim. The unemployment compensation law provides that claims for benefits may be filed, not only with a multitude of regional deputy administrators throughout the state, but with an unemployment compensation agency employee of any of the other forty-nine states, the Federal government, or even the Dominion of Canada. In such a melange of possible claim presentations, the problem of determining priority of occurrence would be considerable and certainly much more time consuming and expensive than merely sending notice to the last employer. Similarly, priority of filing would require constant

and time consuming research among more than fifty different state and federal agencies, as well as at least fifty different branch offices in the state of Ohio, to determine which claim was "first filed" merely for the purpose of determining whether or not a given employer was entitled to notice. Administratively it would be far easier to give the notice on each claim.

An interpretation that "first claim" means the first claim filed with the particular tribunal at each stage of the elaborate appellate procedure would satisfactorily dispose of the instant case (since admittedly this is the first of the particular claimants' claims filed in the Board of Review itself and would thus entitle the appellant employer to notice). But foreseeably other cases would arise in which unconstitutionality would result even with such an interpretation. In addition, the administrative difficulty of determining priority of filing would be just as difficult as that described above, for appeal from the administrator's decision may be filed with the Board, with the Administrator, his deputies or any other federal, state or Canadian administrator.

By elimination of other choices, on constitutional grounds or those of administrative complexity or both, the term "first claim" can only mean the first claim actually *allowed* by final determination within the structure of the unemployment compensation administration, including its Board of Review. The question naturally arises "How can it be determined in advance, for the purpose of notice and hearing, which of many claims filed will be the first actually allowed?" Obviously it cannot be and therefore EVERY CLAIM for benefits, being potentially the first claim to be allowed, must be treated as a first claim until one of them is actually allowed, and the employer is entitled to notice on EACH AND EVERY CLAIM for benefits until final allowance has been made on one of them.

It may be argued that such an interpretation does violence to the language of the statute. The answer to this is that a strained construction is not only permissible, but desirable, if it is the only construction that will save constitutionality. *Knights Templar's etc. Co.* v. *Jarman*, 187 U. S., 197, 47 L. Ed., 139; *State, ex rel. Weinberger*, v. *Miller*, 87 Ohio St., 12; *State, ex rel. Board*, v. *Dunn*, 82 Ohio Law Abs., 102, as affirmed, 110

Ohio App., 329; *Chambers* v. *Bureau of Unemployment Compensation*, 30 Ohio Opinions, 1, as affirmed, 146 Ohio St., 559.

It may also be argued that this interpretation places an undue burden in both time and expense on the Bureau. Actually, as pointed out above, less time will be spent in the automatic forwarding of notice to the employer than in a search of files to determine whether notice is necessary. As to cost, since notice must be mailed to the claimant in any event and at every stage, this court does not apprehend that an additional four cents in postage and one cent in paper on each notice of claim will constitute a substantial item in the Bureau's budget.

Finally, as the Ohio AFL-CIO argues amicus curiae, the sending of notice on each claim would indefinitely hold up payment of needed claims. If by this amicus curiae assumes that employers generally, having protested an initial award of benefits unsuccessfully, would prolong, by running out a string of appeals on later successive claims, the process of payment on such claims, the court does not apprehend that this is at all likely to occur, and even if it should, this is part of the price that must be paid for due process of law. But if amicus curiae contends by such an argument that any person claiming benefits, having been rightly denied them on his first week's claim because of a well founded objection by the employer, should thereby be automatically entitled to all subsequent weekly benefits without objection, and solely on his own representations, the court cannot agree. In essence this would be reducing a statutory disqualification from receiving any benefits at all to a one week additional waiting period to be served. It may well be that this is exactly what the evidence, when both sides are able to present evidence, will show has occurred in the instant case.

Once entitlement for an initial period has been determined, the notice to and opportunity to be heard by the employer can and should be terminated. The reasoning of *Horsman Dolls* v. *Unemployment Compensation Commission, supra,* is ample support for this proposition, if not for that contended for by amicus curiae. For the court, in discussing the question of periodic notices says: (82 Atl. [2d] at 181).

". . . plaintiff well knew that its detached employees, with rare exceptions, would promptly receive benefits for the period

prescribed by the law. Such is the purose of emloyment security. And *the notice of the initial determination would be of no avail in the discovery of after occurring disqualifications.* Recognition of this led to the contention on oral argument that unless the statute be construed to require weekly determinations and notice to the employer it would be violative of due process. *The statute makes no such requirement; and its failure to so. provide does not constitute a denial of the essence of procedural due process.''* (Emphasis added.)

Any requirement that, once initial entitlement is determined, the claimant establish to the employer's (as well as to the administrator's) satisfaction that no new factor has been added to terminate his entitlement would, in fact, constitute harassment of the claimant, as amicus curiae suggest.

For the foregoing reasons the court finds that the statute, as construed to conform to constitutional requirements, requires appellant to be considered as an interested party to the claims here in question; that it was therefore entitled to notice of and opportunity to be heard before the referee and the Board of Review and that the order refusing to accept appellant's application to institute further appeal was both unreasonable and unlawful.

There is, however, a further reason why appellant employer must be considered an interested party for the purpose of the order in question. When, earlier in the course of the labyrinth of decisions, reconsiderations, appeals, and further appeals which the act permits, the claimants on March 3, 1960, requested reconsideration of the administrator's decision, the administrator notified the appellant employer thereof and undertook to mail copy of the new determination to it. No such notice and undertaking were needed unless appellant was an "interested party." Section 4141.28 (G), Revised Code. By administrative decision at first instance the appellant thereby became an "interested party" and the Board of Review could not thereafter, during the course of the case and in Star Chamber, without notice or opportunity to be heard, deprive appellant of that status.

In this respect the sense of fair play exhibited by the administrator and his consciousness of the needs of procedural

due process is to be commended as much as the arbitrary and unreasonable action of the Board is to be deplored. After such a display by the Board it becomes apparent that the hearing by the referee on May 5, 1960, notwithstanding any personal fairness, could not, in law, be either a fair hearing or the impartial discharge of duties required by Section 4141.28 (J), Revised Code.

Had the Board of Review, on the application of the appealing claimants and without notice to the employer, reviewed the case and remanded it for new hearing with notice to the employer of the new trial, due process might have been served however regrettable the conduct of the Board. See *Davidson* v. *Board of Reviews*, 189 Pa. Super., 543, 151 A. (2d), 870. But this is not what the Board did! It received appeal from the losing party in an impartial administrative decision participated in by both parties; it kept the fact of the appeal secret from the prevailing party which had previously been scrupulously notified of every previous stage of the proceeding; it then, through its referee, heard testimony, evidence and argument only from the claimants, the previous losers; it reversed the previous order on such one-sided factual presentation and rendered final judgment for the claimants; it then kept the fact of its judgment secret from the party who would ultimately be called upon to pay it; when the loser got wind of it and asked for hearing, it arbitrarily refused the hearing.

The order of the Board of Review, Bureau of Unemployment Compensation, refusing to receive and act upon the application to institute further appeal, is unreasonable and unlawful and the cause remanded to the Board of Review with direction to vacate any and all findings and decisions based upon the report of its referee rendered May 5, 1960, and to proceed to hear the merits of claimants' appeals from the decision of the administrator on reconsideration, affording notice of hearing and full opportunity to participate therein to employer-appellant.