SMITH, Plaintiff-Appellee, v. MAYFIELD HEIGHTS (City) et, Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23251. Decided February 23, 1955.

36

George J. McMonagle, Cleveland, for plaintiff-appellee.
Squire, Sanders & Dempsey, Cleveland, for defendants-appellants.

## OPINION

By KOVACHY, PJ.

The Mayor of the City of Mayfield Heights, Ohio, removed the Chief of Police, Clarence A. Smith, plaintiff appellee here, from office after appellee's explanation of ten specific charges of misconduct, nonfeasance, gross and wilful neglect of duty and incompetence in office had been found unsatisfactory. Upon appeal to the Civil Service Commission of the City by appellee, the order of removal was affirmed after an extended hearing. Appellee then appealed to the Common Pleas Court of Cuyahoga County, pursuant to §486-17a GC (§143.27 R. C.). That court, upon review of the record made before the Civil Service Commission on questions of law, decided:

"That the decision of the Civil Service Commission of Mayfield Heights, Ohio, affirming the removal of Clarence A. Smith as Chief of Police of Mayfield Heights, Ohio, be and is hereby reversed and this cause is remanded to the Civil Service Commission of Mayfield Heights, Ohio, for a new trial,"

having found

"that although there was evidence to support the order of removal, the failure to admit defendant's evidence and other irregularities in said hearing before the Civil Service Commission were so great they prevented the appellant from having a fair hearing and prevented the Commission from considering all the evidence said irregularities consisted of the prejudicial, erroneous exclusion of evidence offered by and material to the plaintiff appellant, and the prejudicial, erroneous admission of evidence duly objected to by the plaintiff appellant * * *."

The matter before us here is an appeal by the City of Mayfield Heights on questions of law from said judgment of the Common Pleas Court. It claims (1) that the judgment of the Common Pleas Court is contrary to law, and (2) that the Common Pleas Court substituted its judgment for that of the Civil Service Commission. In his answer brief, appellee, the Chief of Police, also assigns an error of law. He claims that the Common Pleas Court erred in failing to reverse the judgment of the Civil Service Commission, and to order the appellee reinstated as Chief of Police and restored to all legal rights lost by his removal.

It is well established in Ohio that the jurisdiction of the Common Pleas Court in appeals from a civil service commission removing a fireman or policeman from office under §486-17a GC (§143.27 R. C.) is special and is limited by the terms of the statute "to determine the sufficiency of the cause of removal. **Kearns v. Sherrill, 137 Oh St 468.** The power of the court under such jurisdiction is to affirm in toto or reverse in toto. When the latter, its duty is merely to reinstate the officer to his position and restore to him the emoluments of office from the date of his discharge. **Hawkins v. City of Steubenville et, 134 Oh St 468.** There appears to be no provision of law authorizing the Com-

mon Pleas Court in appeals to it by virtue of this statute to remand the cause to the civil service commission for a new trial. We consequently hold that the judgment of the Common Pleas Court in this matter, remanding the cause for retrial to the Civil Service Commission has no sanction in law, is erroneous and must be reversed.

The Common Pleas Court in making the order it did based its conclusions upon a finding that Due Process of Law had not been accorded the Chief of Police in his hearing before the commission. The appellant contends that since a person holding a public office does not have a vested right to same, but rather a right to hold office during good behavior, that such person cannot lay claim to the protection of the constitutional provisions of Due Process with regard to his office. The appellee maintains that he was entitled to the safeguards of Due Process of Law set forth in the provisions of both the Ohio and United States Constitutions in his hearing before the Civil Service Commission. We agree with the appellee. Any hearing involving one's rights of whatever nature provided by law must conform to the standards of a fair trial and are subject to the protection of the general rules of fair play which govern society and this is true whether the hearing is before a court of law, an executive or a commission.

While it is true that non-judicial bodies such as commissions are not expected to be held to the same strict conformity to regular rules in the introduction and presentation of evidence as judicial bodies, they, nevertheless, must not disregard fundamentals having to do with the observance of the safeguards provided every person by the constitutional provisions, federal and state, that no person shall be deprived of life, liberty or property without due process of law.

Part of the syllabus in Stuart Jr. v. Palmer, etc. et al, 74 N. Y. 183, reads as follows:

"The constitutional provision declaring that no person shall be deprived of life, liberty or property without 'due process of law' is not limited to judicial proceedings, but extends to every proceeding which may interfere with those rights, whether judicial, administrative or executive."

Just what the expression "Due Process of Law" means, is difficult to define with exactitude. Many eminent jurists, however, have dealt with the question. In the celebrated Dartmouth College case, Webster defined it as follows:

"By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society."

Another statement reads thus:

"Some legal procedure in which the person proceeded against, if he is to be concluded thereby, shall have an opportunity to defend himself."

In 35 Abs 97, State, ex Keogh, v. Gilmore, Judge, syl. 4, reads:

"4. Due process of law means the right to be heard."

While the legislature confined an appeal in these cases to the

Common Pleas Court to the determination of the sufficiency of the cause of removal, we believe that every court of law reviewing a proceeding disposing of a substantial right of an individual has the duty to consider and determine whether such person was accorded a hearing conforming to the elemental requirements of Due Process of Law. This concept was well stated by Judge Matthews in the case of **Kearns v. Sherrill, 63 Oh Ap 533 on page 541**, where he stated:

"* * * We hold that the language of §483-17a GC must be construed to confer upon that court jurisdiction to review the proceedings of the Civil Service Commission to determine whether it had exercised the authority conferred upon it in accordance with the statute and whether Due Process of Law and other constitutional safeguards had been observed, * * *."

The Supreme Court of Ohio unquestionably had such consideration in mind when it wrote, as follows, in par. 2 of the syllabus of **Sorge v. Sutton, 159 Oh St 574:**

"2. Under §486-17a GC, the 'appeal' from a decision of a municipal civil service commission to the court of common pleas, 'to determine the sufficiency of the cause of removal,' accorded members of police and fire departments in the classified civil service contemplates only a review of the proceedings before the commission as to their legality and **regularity** and to determine the sufficiency of the cause of removal and not a trial de novo." (Emphasis added.)

The able judge who tried this case in common pleas court wrote an opinion which was filed and made a part of the record. In it he made findings of fact and conclusions of law as regards the specific charges brought against plaintiff appellee herein. He found that the record before the Civil Service Commission discloses no competent evidence sufficient to cause the removal of the Chief of Police on all charges except charges three and four. We have read with care the bill of exceptions of the proceedings before the Civil Service Commission and believe that it does not justify a reversal of the holding of the court below with respect to the findings of facts and conclusions of law there indicated. We accordingly affirm his conclusions as to charges Nos. 1, 2, 5, 6, 8, 9 and 10.

Charge No. 3 reads:

"3. In that in the course of a coroner's inventory had on or about April 20, 1950 of the valuable effects in the home of Lester Hostetler, deceased, a former resident of Mayfield Heights, he, the said Clarence A. Smith, converted to his own use valuable personalty, the property of the estate of said Lester Hostetler, to-wit: one promissory note in the amount of $250.00 which said note was payable to the order of said Lester Hostetler with the maker of said note being one Thomas A. Lanese."

The answer of the appellee to this charge was as follows:

"I never converted to my own use a promissory note of the estate of Lester Hostetler. On or about April 20, 1950, Mr. J. E. Hostetler, the father of Lester Hostetler, turned over to me a note for $250.00 signed by Patrolman Thomas A. Lanese, and asked me to give this note to Mr.

Lanese and tell him to take care of it. I did turn this note over to Patrolman Lanese, as Mr. J. E. Hostetler had requested, and told Mr Lanese to take care of it. Patrolman Lanese told me that he had paid $125.00 on this note but had no receipt for its payment. I understood that he did take care of his obligation on this note by paying $100.00 to the Estate of Lester Hostetler. As Chief of my department it was customary for me to assist in straightening out any claims against my men. This was not the only time when my assistance was requested in connection with the debts of Patrolman Thomas A. Lanese."

Charge No. 4 reads:

"In that on or about April 22, 1950, the said Clarence A. Smith attempted to obtain $125.00 from a subordinate, to-wit, Patrolman Thomas A. Lanese, in exchange for the promissory note set forth in sub-paragraph 3, which said promissory note said Clarence A. Smith had converted to his own uses as aforesaid."

And appellee's answer to same is:

"I never attempted to obtain $125.00 from Patrolman Thomas A Lanese in exchange for the note referred to as Item 3. This note was never converted to my uses. My possession of it is explained in Item 3."

The following proceedings during the trial occurred: (Record pages 288 and 289):

"Chief Smith, did you convert to your own use valuable personal property of the estate of Lester Hostetler, to-wit, one promissory note in the amount of $250.00?

"Mr. Knerly: I object.

"Commissioner Baker: Sustained.

"Mr. McMonagle: (Proffer) The witness, if permitted to answer would have stated that he never did convert to his own use valuable personalty, the property of the estate of said Lester Hostetler, to-wit one promissory note in the amount of $250.00.

"Now, sir, Chief Smith, did you on or about April 22, 1950, or on any date, attempt to obtain $125.00 from Patrolman Thomas A. Lanese in exchange for this promissory note?

"Mr. Knerly: I object to that, too.

"Commissioner Baker: Sustained on the same basis of the previous question.

"Mr. McMonagle (Proffer). The witness, if permitted to answer, would have testified that he never did attempt to obtain $125.00 from his subordinate, to-wit, patrolman Thomas A. Lanese, in exchange for the promissory note."

On pages 274, 275 and 276, Chief of Police Smith was testifying on direct examination.

"Q. All right. Now, in your taking this note and saying that you would attempt to get it taken care of, was that in accordance with a practice that you followed in the department?

"A. It was.

"Mr. Knerly: Objection and move that the answer be stricken.

"Commissioner Baker: Sustained.

"Mr. McMonagle. (Proffer.) The witness if permitted to answer, would have stated that it was in accordance with an established practice in the department in order to assist in keeping the men in the department from becoming involved by virtue of the debts.

"Q. Have you on any other occasions attempted to facilitate the payment of an indebtedness claimed against Patrolman Lanese?

"Mr. Knerly: Objection.

"Commissioner Baker: Sustained.

"Mr. Monagle. (Proffer.) If the witness were permitted to answer, he would have stated that he had attempted to procure payment on other occasions in accordance with the accepted practice in his department.

"Q. And was your handling of this note, in accordance with the accepted and customary practice you followed in the department in order to assist your members?

"Mr. Knerly: Objection.

"Commissioner Baker: Sustained.

"Mr. McMonagle (Proffer): If the witness were permitted to answer, he would have stated that it was in accordance with the accepted practice."

At the bottom of page 239, and on pages 240, 241 and 242, with Thomas A. Lanese testifying on cross-examination, the following proceedings were had:

"Q. As a matter of fact, didn't Chief Smith call you in to see if he couldn't get you to pay this without garnisheeing your wages?

"Mr. Knerly: I object to this line of questioning, as to being irrelevant. It has nothing to do with the action concerning the note.

"Mr. McMonagle: All right. Our answer before you—with reference to the note, our answer in these proceedings says this:

"'As Chief of my department, it was customary for me'—this is at page 2 of the chief's answer—'This was not the only time my assistance was requested in connection with the debts of patrolman Lanese.'

"Mr. Knerly: At this time I move that that portion of Chief Smith's answer be stricken from the record as being irrelevant and having nothing to do with this note.

"Commissioner Baker: The Commission feels that that has no bearing on the actual charge and should be stricken

"Mr. McMonagle: You mean that the procedure followed by the Chief in the line of the operation of his department has nothing to do with this incident?

"Commissioner Baker: I mean that the reference to other such involvements of Mr. Lanese's has no bearing on this particular case

"Mr. McMonagle: Exception. (Proffer.) I want the record to show that if the witness were permitted to answer. he would have stated that the Chief did call him in and requested him to make payments of another debt so that no garnishment may be had of his wages."

Due Process requires that a person charged with misconduct of whatever nature or kind in regard to his performance of a public

office have the opportunity to be fully heard. The plaintiff appellee as shown above, not only was not allowed to deny under oath the specific charges brought against him, but was prevented from presenting evidence bearing on one of the written affirmative defenses made by him in his answer to the charges, namely, that taking the note of Thomas Lanese was in accordance with an established custom in the police department under which the Chief of Police interceded in matters involving debts of policemen under his command by undertaking to adjust the matter with a party making a claim with the view of sparing embarrassment to the officer, as well as to the department, if these incidents resulted in court action.

The appellee to maintain this indicated defense also presented a witness by the name of John J. Suvak, a Justice of the Peace. The record discloses these proceedings on pages 261, 262 and 263:

"Q. Now, Mr. Suvak, did you contact Chief Smith in an effort to attempt to have him procure the payment of a claim by Dominic Lanese against Thomas A. Lanese?

"Mr. Knerly: Objection.

"Commissioner Baker: Sustained.

"Mr. McMonagle (Proffer): The witness, if permitted to answer, would have stated that he did contact Chief Smith as Chief of the Police Department, in an attempt to ask his assistance in procuring the payment of the indebtedness of Thomas A. Lanese to Dominic Lanese in line with the custom and practice of the Chief of Police which was known to this man.

"Q. Mr. Suvak, did you follow your established practice and the usual practice, as you understood it in the Police Department, in attempting to procure the assistance of Chief Smith in having Thomas A. Lanese pay an indebtedness due to Dominic Lanese?

"Mr. Knerly: Objection.

"Commissioner Baker: Sustained

"Mr. McMonagle. (Proffer.) The witness, if permitted to answer, would have stated that he was following such practice known to him to be proper."

This testimony likewise had a direct bearing on the affirmative defense of the Chief of Police as regards the note.

The record discloses that Charges Nos 3 and 4, revolved around Police Officer Thomas A. Lanese. The testimony. in the main, presented by the City to sustain these charges, emanated essentially from him either by way of direct testimony or testimony of others who related information told them by Thomas Lanese. In resolving this matter, the Commission had the choice of believing Lanese or the Chief of Police. They chose to believe Lanese. In a situation where the testimony of one or the other of two witnesses becomes critical as to the truth involved, testimony bearing on the motive or credibility of either witness becomes a matter of some importance. The Commission refused to receive testimony bearing directly on these factors with respect to the witnesses indicated above. It even refused to hear testimony involving the Chief of Police of an adjoining municipality and tending

to show the motive of Thomas Lanese in testifying against his superior officer as described on pages 27 and 28 of the record.

"Q. Now, sir, you are acquainted with Chief Dixon, are you not?

"A. Yes, I am.

"Q. And he is the Chief of Police of one of the adjoining municipalities here?

"A. That's correct.

"Q. And you were acquainted with him in November of 1951 were you not?

"A. Yes I was.

"Q. You had a conversation with him in about the month of November, 1951, in which you stated that either Smith was going to go, it would be his job or your job, did you not, sir?

"Mr. Knerly: Objection.

"Commissioner Baker: Objection sustained."

The Common Pleas Court found these irregularities sufficient to declare that the plaintiff appellee herein did not receive a fair hearing before the Civil Service Commission pertaining to Charges Nos. 3 and 4 in contravention of his constitutional rights under the Due Process of Law provisions of both the United States and the Ohio Constitutions We affirm these conclusions. We affirm such conclusions for the reason that the hearing held before the Civil Service Commission with respect to Charges Nos. 3 and 4 denied the appellee the elemental rights guaranteed him under those provisions. We hold further that a hearing in which a party is not accorded the constitutional rights of Due Process of Law is null and void and of no effect. As a consequence, Charges 3 and 4 cannot be the basis for the removal of the Chief of Police by the Civil Service. Commission.

Kessler v. Strecker, 307 U. S. 22, syllabus 5 reads in part:

"* * * an administrative order for deportation of an alien made after fair hearing, based on findings supported by evidence and without error of law is conclusive; if any of these elements was lacking it is void."

Also 307 U. S. 22, 34:

"If the hearing was fair, if there was evidence to support the finding of the secretary, and if no error of law was committed, the ruling of the Department must stand and cannot be corrected in judicial proceedings. If, on the other hand, one of the elements mentioned is lacking, the proceeding is void and must be set aside."

Since we have determined that the hearing in respect to Charges 3 and 4 is null and void and of no effect for the reason that appellee was not afforded due process and further find that the judgment of the common pleas court, when considering the balance of the charges was not sufficient to cause his removal should be affirmed, and since we hold that the Common Pleas Court lacks authority to remand this cause to the Civil Service Commission for retrial, we therefore proceed to enter the judgment which the Common Pleas Court should have made under the circumstances and disaffirm the removal of the Chief of Police by the Civil Service Commission of the City of Mayfield Heights, and order his restoration to all the emoluments of office lost to him,

thereby, and remand this cause to the Common Pleas Court to carry this judgment into effect.

Judgment reversed and final judgment for plaintiff appellee. Exceptions. Order see journal.

SKEEL, J, HURD, J, concur.