THE STATE, EX REL. PRENTICE, APPELLEE, *v.* CITY OF MIDDLEBURG
HEIGHTS ET AL., APPELLANTS.

[Cite as State, ex rel. Prentice, v. Middleburg Heights,
12 Ohio App. 2d 59.]

(No. 28412—Decided November 2, 1967.)

*Mr. Phillip C. Barragate* and *Mr. Marston G. Bergmann*,
for relator appellee.

*Mr. Albert M. Heavilin*, law director, for respondents ap-
pellants.

ARTL, J.   This is an appeal on questions of law from a
judgment of the Common Pleas Court of Cuyahoga County
which issued a writ of mandamus commanding the respondent,
an appellant herein, city of Middleburg Heights, to restore

relator, appellee herein, Clyde Prentice, to his former position as chief of police, subject to his removal therefrom only pursuant to Chapter 143 of the Revised Code (Civil Service).

The pertinent facts are as follows: On June 14, 1948, the relator was appointed chief of police by the mayor with the approval and consent of the Council of the village of Middleburg Heights. He served his probationary period, and, on March 14, 1949, his appointment was confirmed and made permanent with the approval and consent of the village council.

Based on the 1960 federal census, Middleburg Heights changed its status from a village to a city and adopted a charter for its government effective as of January 1, 1962.

The relator continuously served in his position as chief of police from January 14, 1948. After the effective date of the charter he continued to occupy the position of chief of police until January 4, 1966, when, pursuant to Article VII, Section 7.04 of the city charter, he was removed by the mayor as chief of police and demoted to the rank of patrolman with reduction of pay by the respondent mayor with the approval and consent of the city council. Under such provisions of the charter there were no charges preferred against the relator in writing nor was the relator provided with an opportunity for a public hearing before the city council. The relator, on January 17, 1966, requested the mayor to reduce the charges to writing pursuant to Sections 733.35 and 733.36, Revised Code; the mayor refused to do so on the ground that the city charter did not require it.

Relator's request for a writ of mandamus was predicated on the assertion that his removal could be validly achieved only by compliance with Sections 733.35 and 733.36, Revised Code, which provide for written charges to be filed with the legislative authority, for notice and for hearing.

Under the foregoing factual situation the court ruled that Sections 733.35 and 733.36, Revised Code, were not applicable for the reason that Sections 733.23 to 733.41, Revised Code, apply only to villages and not to cities. Those statutes are contained in a division which is entitled "Executive Power in Villages," and a reading of such statutes demonstrates that the conclusion of the court on this point is inescapable.

Sections 733.01 to 733.22, Revised Code, constitute compar-

able statutes which are applicable to cities. Such statutes are contained in a division which is entitled "Executive Power in Cities," and Section 733.01, Revised Code, provides that the executive officers "shall have exclusive right to appoint * * * and remove or suspend any of such officers, clerks, or employees, subject to the civil service laws."

Looking to the civil service laws in Chapter 143, Revised Code, Section 143.08 (A) (3), Revised Code, specifically places chiefs of police in the classified service:

"* * * such Sections 143.01 to 143.48, inclusive, of the Revised Code do not exempt the chiefs of police departments and chiefs of fire departments of cities from the competitive classified service[.]"

Notwithstanding the foregoing provision, it is well established by case law that "the position of police chief may by charter provision be included in the unclassified service." 9 Ohio Jurisprudence 2d 483, Civil Service, Section 142; *State, ex rel. Lynch,* v. *Cleveland* (1956), 164 Ohio St. 437; *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297. The trial court, in the case at bar, ruled, therefore, that the relator did not have civil service status for the reason that Article X, Section 10.-05 (e) of the Middleburg Heights Charter specifically places the chief of police in the unclassified service as opposed to the classified service of the city Civil Service Commission.

It is apparent that the trial court had before it and gave consideration to the keynote decision of the Supreme Court of Ohio in *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191. The trial court in its opinion declared:

"Thus the Supreme Court, by the above case, has firmly established that the matter of regulation and promotions in the police and fire departments are of local concern and that charter provisions will prevail over state statute. In analyzing the facts of this case the court must start with the decisions of the Supreme Court as being the present position of the state in this regard."

Referring again to the *Canada* decision, the trial court states:

"However, that decision cannot be dispositive of this case as here the relator was not appointed under the provisions of

the city charter but was appointed under state statute when the municipality was a village. This being the case the question arises as to whether the relator's status as chief of police and the procedure for removal under provisions of state statute would carry over contrary to the present provisions of the city charter.''

The court then relies upon *Smith* v. *Mayfield Heights* (Common Pleas Court, 1952), 63 Ohio Law Abs. 483, and summarizes its reasoning as follows:

"The court, reviewing all of the above provisions of statute, city charter, and court opinions, is of the opinion that in view of the fact that the relator here was originally appointed under the provisions of state statute in [*sic*] that his status did not change when the village became a city since there were no new appointments at that time and that his position as chief of police continued as it was under the provisions of state statute following the adoption of the city charter and therefore his removal must now be governed by the provisions of statute for removal of city police and firemen as set forth in Chapter 143 of the Revised Code. In making this decision the court will point out that this is limited to the facts in this case where the original appointment was under state statute and there was no new appointment after the adoption of the charter.

"Consistent with the above ruling the court therefore will issue a writ of mandamus directing the mayor to proceed as to removal as provided for in Chapter 143 of the Revised Code.''

At this juncture we are confronted with the problem involving the home-rule provisions of a municipal charter versus statutory provisions dealing with the same subject matter. Reference has been made above to the keystone decision of our Supreme Court in the *Canada case*.

In the *Canada case*, the issue before the court was whether the appointment of police officers of a city represents the exercise of one of the "powers of local self-government" within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution or whether such appointment constitutes a "police regulation" within the meaning of those words as used in Section 3 of Article XVIII of the Ohio Constitution. This issue arose due to the fact that the Charter

of the city of Columbus provided for such appointments in a manner different from that provided for by a civil service statute.

The Ohio Constitution reads:

Section 3, Article XVIII.

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 7, Article XVIII.

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government."

The court in *Canada* followed precedent when it declared in the fourth paragraph of the syllabus that:

"The words, 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.' "

Thus, if such appointments were deemed to be a "police regulation," the statute would prevail over the charter provision for the reason that the latter was "in conflict with general laws." If, however, such appointments were deemed to be one of the "powers of local self-government," then the charter provision would prevail over the statute even though they were in conflict.

After an exhaustive analysis of former decisions, the court ruled:

"The appointment of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution." (Paragraph one of the syllabus.)

"The mere fact that the exercise of a power of local self-government may happen to relate to the police department does not make it a police regulation within the meaning of the words 'police-regulations' found in Section 3 of Article XVIII of the Constitution." (Paragraph five of the syllabus.)

"Where a municipality establishes and operates a police department, it may do so as an exercise of the powers of local self-government conferred upon it by Sections 3 and 7 of Article XVIII of the Constitution; and, if it does, the mere interest or concern of the state, which may justify the state in providing similar police protection, will not justify the state's interference with such exercise by a municipality of its powers of local self-government." (Paragraph seven of the syllabus.)

The *Canada* decision was the culmination of a long line of decisions of the Supreme Court of Ohio involving the issue of state control versus municipal control over municipal police officers.

The trial court indicated that the *Canada case* is not dispositive of the issue raised in the case at bar. The trial court did rely upon the decision in *Smith* v. *Mayfield Heights*, 63 Ohio Law Abs. 483.

In the *Smith case*, the defendant mayor attempted to remove the plaintiff police chief on the theory that the office of chief of police became vacant on December 31, 1951, for the reason that the village of Mayfield Heights became a city on October 5, 1951, and adopted a charter on January 1, 1952.

The court in *Smith* ruled that the chief of police of a village continues in office when the status of the village is changed to that of a city and that the mayor has no right to remove the chief of police without cause. In its opinion the court dwells at length on the social and legal reasons why state statutes should prevail over municipal charters as to police departments; this line of reasoning, of course, is no longer the law in light of the *Canada* decision.

The primary factual distinction between *Smith* and the instant case, which distinction the trial court in the case at bar appears to have overlooked, is that the plaintiff in *Smith* had civil service status under the Mayfield Heights Charter whereas the relator in the instant case specifically had no civil service status under the Middleburg Heights Charter.

An analysis of the sections of the Revised Code in Chapter 143 dealing with the subject of removal of persons in the classified civil service is quite interesting but not at all pertinent to the problem here presented.

Two recent decisions handed down by the Supreme Court of Ohio, when taken in conjunction with *Canada*, apparently resolve the instant case.

In *In re Removal of Taylor* (1961), 172 Ohio St. 394, the mayor of the city of Eastlake removed from office the chief of police, who had been appointed in that capacity when such city was a village. The chief of police had not taken a civil service examination after the village became a city.

The court reasoned as follows (opinion of O'Neill, J., at page 400):

"The second question presented by this case is: Did the chief of police have a right of appeal from the removal order of the mayor to the civil service commission of the city of Eastlake and from the civil service commission to the Common Pleas Court?

"This question was raised in the Common Pleas Court.

"Section 737.11, Revised Code, provides in part:

" ' * * * The police and fire departments in every city shall be maintained under the civil service system.'

"It is admitted by Taylor that he assumed his position without first taking a competitive promotional examination as required by law and without taking any competitive or noncompetitive civil service examination. Taylor argues that because he became chief of police of the village of Eastlake without civil service status before the village of Eastlake became a city, upon the village of Eastlake becoming the city of Eastlake, civil service benefits inured to him as chief of police of the city of Eastlake, even though no examination as required by law was ever taken.

"The case of *Smith* v. *City of Mayfield Heights*, 63 Ohio Law Abs. 483, 108 N. E. 2d 861, is relied upon to support this position. That case is not controlling.

"This court has decided this question in *State, ex rel. Ethell,* v. *Hendricks*, 165 Ohio St. 217, 135 N. E. 2d 362; *State, ex rel. Petit,* v. *Wagner et al., Civil Service Comm.*, 170 Ohio St. 297, 164 N. E. 2d 574; *State, ex rel. DeMatteo,* v. *Allen, Mayor*, 170 Ohio St. 375, 165 N. E. 2d 644.

"Taylor, having been carried over as chief of police of the city of Eastlake when the village acquired the status of a city, became chief of police of the city of Eastlake without taking the

civil service examination required by law. He, therefore, was not in the classified service and not entitled to the benefits of the civil service law. He had no right of appeal to the civil service commission from the order of removal by the mayor or to the Common Pleas Court from the decision of the municipal civil service commission.''

' · In the case at bar, the relator was likewise carried over as chief of police of the city of Middleburg Heights when the village· acquired the status of a city. From the record it appears that he likewise became chief of police of the city without taking the civil service examination. In addition, he was expressly excluded from the classified civil service by the city charter. It can only be concluded, then, that "he, therefore, was not in the classified service and not entitled to the benefits of the civil service law.''

In *Christensen* v. *Hagedorn* (1962), 174 Ohio St. 98, which the Court of Appeals for Lucas County certified to the Ohio Supreme Court for the reason that its judgment therein was in conflict with the judgment of the Court of Appeals for Cuyahoga County in *Smith* v. *City of Mayfield Heights*, 99 Ohio App. 501, the high court ruled (page 102):

"Since a holdover mayor under Section 703.07, Revised Code, has only the powers of a village mayor, such mayor in appointing a patrolman creates no greater rights in such patrolman than could have been bestowed by a village mayor. In view of the fact that a patrolman appointed by a mayor of a village has no civil service status under state law, the necessary conclusion is that a patrolman of a city appointed by a holdover mayor under Section 703.07, Revised Code, also has no such status.

"The judgment of the Court of Appeals is correct and, therefore, is affirmed.''

· Thus, the court in *Christensen* held that upon the transition of· a village to a city and by the adoption of a charter a police officer· appointed by the village mayor does not automatically attain civil service status in the city police department and, therefore, could be removed from the city police department without regard to civil service law. Also, the court by implication overruled *Smith*.

The specific issue determinative of the case at bar is whether the relator can be removed from the office of police chief pursuant to the Charter of the city of Middleburg Heights or must be removed, if at all, pursuant to the civil service laws of Ohio.

It is to be noted that *Smith* v. *Mayfield Heights* (Common Pleas Court, 1952), 63 Ohio Law Abs. 483, and *Smith* v. *Mayfield Heights* (1955), 99 Ohio App. 501, are distinguishable from the case at bar in that the plaintiff therein had civil service status whereas the relator herein has no civil service status; it also appears that *Smith* has, by implication, been overruled by *Christensen* v. *Hagedorn* (1962), 174 Ohio St. 98. We, therefore, conclude that the decisions of the Supreme Court of Ohio in *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191; *In re Removal of Taylor* (1961), 172 Ohio St. 394; and *Christensen* v. *Hagedorn* (1962), 174 Ohio St. 98, control the case at bar, and demonstrate that the charter provision is to prevail over the statute as to the removal of the relator from office. For the reasons stated above, we conclude and hold that the judgment of the trial court is contrary to law, and the cause is remanded to the Court of Common Pleas with instructions to vacate such judgment and to deny the writ of mandamus.

*Judgment reversed.*

CORRIGAN, C. J., and WHITE, J., concur.