Rollin A. KISER, Plaintiff,

v.

Steven C. LOWE, et al., Defendants.

No. 00–CV–1368.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 7, 2002.

David William Phillips, III, Melissa A Chase, Schulze and Phillips, Marysville, OH, for Plaintiff.

Boyd W. Gentry, Jeffrey Charles Turner, Jenks, Surdyk Oxly Turner & Dowd, Dayton, OH, for Defendant.

### OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Defendants' Motion for Summary Judgment, filed on July 3, 2002. In their Motion, the Defendants, Steven C. Lowe, sued in his individual and official capacity as the Mayor of Marysville, the City of Marysville, and James Wimmers, Sr., Barbara Bushong, William Sampsel, Mark Reams, John Gore, Jack Parsons, and Daniel Fogt, sued in their official capacities as the members of the City Council of the City of Marysville (collectively, "City Council"), seek summary judgment with respect to all of the Plaintiff's claims. The Court held a hearing on the Motion on November

1, 2002. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

For the following reasons, the Court **GRANTS** the Defendants' Motion for Summary Judgment.

## II. FACTS

The Plaintiff, Rollin A. Kiser ("Kiser"), began working as the Chief of Police for Defendant City of Marysville on May 19, 1997. At all times during his employment, the position of Chief of Police was designated in the unclassified service by Marysville Ordinance.

Kiser asserts that, on various dates in the year 2000, Defendant Steven C. Lowe ("Lowe" or "Mayor Lowe"), the Mayor of the City of Marysville, made various disparaging, untrue, false, and defamatory statements about him. In particular, Kiser claims Lowe stated that, in his position as the Chief of Police, Kiser "encouraged questionable traffic stops." Kiser alleges that this statement appeared in an internal memorandum submitted to the City of Marysville Administrator under the listing, "concerns regarding Rollin Kiser's performance," as well as in statements to the City Council.

On August 24, 2000, Lowe terminated Kiser from his position as the Chief of Police. Although Kiser was relieved of his duties on August 24, 2000, he was paid his normal wages until his removal was confirmed by the Marysville City Council on September 6, 2000.

On September 6, 2000, the City Council held a Special Meeting to confirm Kiser's termination. Kiser attended the meeting and, although he did not request a public hearing regarding his termination, he did request to attend the City Council's executive session which considered his termination. In executive session, the City Council decided to deny Kiser's request to attend the session.

After the executive session, the City Council returned to open session to take a formal vote. Upon returning to open session, the City Council asked whether Kiser had anything that he wished for the Council to consider. Kiser asked to hear and have an opportunity to respond to the allegations made against him by Mayor Lowe. The Council, however, refused this request. The City Council then formally voted to confirm Kiser's termination.

Kiser's termination from his position as the Chief of Police was reported by the local press in Marysville as well as by the Columbus Dispatch. The media reported Lowe as having stated that Kiser was terminated because he "did not meet our expectations," he was "defiant" of the Mayor, and that the termination was "in the best interest of the City ... and was completely justified and legal...."

Based on the manner in which he was terminated and the statements allegedly made by Mayor Lowe, Kiser filed a Complaint in the Court of Common Pleas of Union County against Mayor Lowe and the City Council. The Defendants removed the Complaint to this Court. In his Complaint, the Plaintiff alleges the following causes of action: (1) wrongful termination; (2) civil rights violation (due process of law); (3) violation of 42 U.S.C. § 1983 based on an infringement of the Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution; (4) termination in violation of public policy; (5) slander; and (6) violation of Ohio's Open Meetings Act ("Sunshine Law"). This matter is now before the Court on the Defendants' Motion for Summary Judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The non-moving party, however, "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City*

*of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the mere existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

### A. Due Process: 42 U.S.C. § 1983: Deprivation of Property

Section 1983 reads, in relevant part:

Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. To succeed on a claim for a violation of § 1983, the plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him of his rights secured by the United States Constitution or its laws. *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001). The Plaintiff claims that the Defendants acted under color of state law when they deprived him of his rights under the Fifth and Fourteenth Amendments to the United States Constitution by failing to give him notice or an opportunity to be heard before depriving him of his property interest in his employment as the Chief of Police.[1]

---

1. In addition, Kiser asserts that the Defendants violated Art. I, § 16 of the Ohio Constitution. That provision, which states, in pertinent part, that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay," provides substantially the same safeguards as

The Due Process Clause of the Fourteenth Amendment provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. For a procedural due process claim under the Fourteenth Amendment to succeed, a plaintiff must first establish the existence of a liberty or property interest of which he was deprived by the defendant. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). The plaintiff must then demonstrate that he was deprived of that interest without due process. Indeed, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Due process, however, is a flexible concept that must conform to the specific facts in a given case. *Id.* at 334, 96 S.Ct. 893.

■ To succeed on his claim, Kiser must demonstrate that he had a property interest in his continued employment as the Chief of Police. The Court finds, however, that Kiser cannot make this showing because, pursuant to Marysville Ordinance, he was employed as an unclassified civil servant. *See* MARYSVILLE, OH, ORDINANCE 22–93 § 100.15(a)(3) (stating, in pertinent part, that the "unclassified service shall consist of the following appointive and elective positions with such changes as may be approved by Council[:] Officers appointed directly by the Mayor, including specifically ... All Division Heads"). As an unclassified civil servant, Kiser had no property interest in his continued employment, and was afforded none of the procedural safeguards available to those in classified service. *See Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir.1995) (holding that, under Ohio law, "unclassified civil servants have no property right to continued employment," and, thus, are not entitled to a hearing before being terminated); *Peters v. Jackson*, 100 Ohio App.3d 302, 653 N.E.2d 1238, 1241 (1995) (recognizing that an employee who was designated as an unclassified civil servant by local law was not entitled to civil service protection); *Lee v. Cuyahoga County Court of Common Pleas*, 76 Ohio App.3d 620, 602 N.E.2d 761, 763 (1991) (concluding that unclassified employees serve at the pleasure of their appointing authority and have no vested property interest in their continued employment).

Kiser contends that he had a property interest in his continued employment despite the existence of Marysville Ordinance 22–93 § 100.15(a)(3). In particular, Kiser relies on § 9.02 of the Marysville City Charter, which states, in pertinent part:

> For the efficient administration of the City it is necessary for two Divisions to be considered permanent and may be eliminated only by a change in the Charter. They are:
>
> 1. Division of Police
> 2. Division of Fire
>
> These Divisions shall be governed by ordinance, in concert with the Civil Service regulations of the City and the Ohio Revised Code, which may determine such things as number of employees, duties, salaries, etc.

Kiser reads this Charter provision to incorporate the Ohio Revised Code with respect to the Division of Police. He contends that certain provisions of the Ohio

does the Fourteenth Amendment to the United States Constitution. *Peebles v. Clement*, 63

Ohio St.2d 314, 408 N.E.2d 689, 691 (1980).

Revised Code that are incorporated into the Charter create a property interest in his continued employment and operate to guarantee him the right to due process with respect to his termination.[2] Kiser asserts that the fact that a Marysville ordinance indicates that he is a member of the unclassified civil service is irrelevant because the City Charter supercedes the ordinance in its mandate that both the Civil Service regulations and the Ohio Revised Code apply to the Division of Police.

The Court finds that the Plaintiff errs when he claims that the Marysville City Charter mandates that the Ohio Revised Code apply to the Division of Police. The plain language of the Charter states that the Division of Police "shall be governed by ordinance, in concert with the Civil Service regulations of the City and the Ohio Revised Code. . . ." This language indicates that the City ordinances govern the Division of Police, while the Civil Service regulations and the Ohio Revised Code apply only to the extent permitted by the City ordinances. It is the ordinance, referred to first in the Charter provision, that controls the governance of the Division of Police. To give the provision the meaning ascribed to it by Kiser, the Charter would have to state that the city ordi-

nances govern the division of police only to the extent that such ordinances do not conflict with the Civil Service regulations and the Ohio Revised Code. Instead, the Charter provision, beginning with the clear statement that the divisions "shall be governed by ordinance," seems to be drafted to have the opposite effect.

Kiser argues that those who drafted the Charter intended for the chief of police to be part of the classified civil service, and that any interpretation of the Charter to the contrary conflicts with that intent. He points out that, unlike § 9.02 of the Charter, § 9.01, which governs all divisions other than the divisions of fire and police, indicates that the Mayor has the authority to remove heads of those divisions at his discretion. He argues that, if the drafters had intended for the chief of police to be an unclassified employee, removable by the Mayor at his discretion, then the division of police would have been part of § 9.01 of the Charter, rather than having been made distinct through § 9.02.

The Court recognizes that the Charter provision at issue is drafted in a somewhat unclear manner, and leads to an arguably illogical result.[3] To paraphrase Justice Brennan, however, "[i]f [plaintiff's inability

---

**2.** In particular, Kiser relies on Ohio Rev.Code §§ 124.34, 733.35, and 733.36. Under Ohio Rev.Code § 124.34, when a chief of police is removed from office, the appointing authority must serve the chief with a written notice of the removal, stating the reasons therefor. The chief is then entitled to appeal the order of removal to the municipal civil service commission, and have a hearing on the appeal. Ohio Rev.Code § 733.35 provides that the mayor of a municipality may initiate procedures to remove a chief of police from office only when the mayor has reason to believe that the chief has been guilty, "in the performance of his official duty, of bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness." Ohio Rev. Code § 733.36 sets forth the manner in which

charges filed pursuant to § 733.35 are to be heard and decided by the legislative authority.

**3.** The Court notes that, in fact, it may not have been illogical for the drafters to have distinguished the Divisions of Fire and Police from the divisions set forth in § 9.01, even if the heads of all those divisions are in the unclassified service, subject to removal at the Mayor's discretion. It appears that the divisions were separated into § 9.01 and § 9.02 not on the basis of the Mayor's power to remove the heads of those divisions, but, rather, on the basis that the divisions discussed in § 9.01 are not necessarily permanent, while the Divisions of Police and Fire are permanent, subject to elimination only by a change in the Charter.

to seek the protection of the Ohio Revised Code] is a defect ... it is one inherent in the [Charter] as written, and hence beyond [this Court's] power to correct.... [The Marysville Charter] may be a poorly drafted [charter]; but rewriting it is a job for [the Marysville legislative body] if it is so inclined, and not for this Court." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (discussing the drafting of RICO) (internal quotations omitted).

Despite Kiser's protestations, Kiser was an unclassified employee pursuant to Marysville ordinance. As such, he had no protected property interest in his continued employment, and he was not entitled to the protections of Ohio Rev.Code §§ 124.34, 733.35, or 733.36. *See Peters*, 653 N.E.2d at 1245 (holding that § 124.34 explicitly covers only employees in the classified civil service); *State ex rel. Prentice v. City of Middleburg Heights*, 12 Ohio App.2d 59, 231 N.E.2d 85, 90 (1967) (holding that, because the city charter placed the chief of police in the unclassified service, he had no appeal from the removal order of the mayor, and Ohio Rev.Code §§ 733.35 and 733.36 did not apply).[4] Accordingly, Kiser had no constitutional right to either notice or a hearing before his termination from employment.

Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment on the Plaintiff's claim brought pursuant to 42 U.S.C. § 1983 for a deprivation of his right to due process.

## B. Civil Rights Violation: Deprivation of Liberty Interest

The Plaintiff asserts that he was deprived of his civil rights because he was entitled to a name-clearing hearing after Mayor Lowe created and disseminated false and defamatory information about him, indicating that he encouraged questionable traffic stops, lacked leadership, was defiant, and that his firing was "completely justified and legal."

■ When an individual's reputation or honor are at stake because of the government's actions, due process requires that the individual be given notice and a hearing so as to have an opportunity to clear his name. *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (citation omitted). Absent a finding of a property right in continued employment, a name-clearing hearing is required only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination so as to infringe on his right to liberty. *State ex rel. Kilburn v. Guard*, 5 Ohio St.3d 21, 448 N.E.2d 1153, 1155 (1983) (citation omitted). Defamation alone, however, is not enough to invoke due process concerns. *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir.2002) (citation omitted). Rather, the defamatory statement must be accompanied by some "alteration of a right or status 'previously recognized by state law,' such as employment." *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

■ A plaintiff must demonstrate five factors to establish that he was deprived of a liberty interest and is entitled to a name-clearing hearing:

"First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of a liberty interest when the employer has

---

**4.** The Plaintiff attempts to distinguish *Prentice* on the ground that the Marysville Charter does not designate the chief of police in the unclassified service, as did the charter at issue in that case. The Charter here, however, indicates that the Division of Police shall be governed by ordinance, and the ordinance, in turn, dictates that the Chief of Police is in the unclassified service.

alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary."

*Id.* at 320 (quoting *Brown v. City of Niota,* 214 F.3d 718, 722–23 (6th Cir.2000)) (citing *Ludwig v. Bd. of Trustees,* 123 F.3d 404, 410 (6th Cir.1997)). If he establishes these five elements, the plaintiff will be entitled to a name-clearing hearing if he requests one. *Id.* (citations omitted).

 Applying the five factors set forth in *Quinn,* the Court finds that the Defendants are entitled to summary judgment with respect to this claim. Although some of the factors may weigh in favor of the Plaintiff, he is unable to prove all five factors, as is necessary to succeed on his claim. In particular, the Court recognizes that, if Mayor Lowe indicated that Kiser encouraged questionable traffic stops, such a statement might amount to more than a mere allegation of improper or inadequate performance, as the statement at least implicitly questions the morality and legality of Kiser's leadership.[5] Furthermore, Kiser's request to attend the executive session may be tantamount to a request for a name-clearing hearing. None of the other factors, however, weighs in favor of the Plaintiff, even when the facts are viewed in the light most favorable to him.

First, Kiser has failed to present more than a mere scintilla of evidence with respect to his claim that the Defendants made any stigmatizing statements in conjunction with his termination. Although

he alleges that, at various times during the year 2000, Mayor Lowe indicated that Kiser encouraged questionable traffic stops, he has failed to present evidence that Lowe made such a statement in the sessions that led to Kiser's termination. Indeed, one of Kiser's complaints is that the Defendants failed to state publicly any reasons for his termination. Second, Kiser has not demonstrated that any stigmatizing statements or charges were made public. Although Mayor Lowe indicated to the media that Kiser lacked leadership, was defiant, and that his firing was "completely justified and legal," such statements are not of such a stigmatizing nature as to invoke the Plaintiff's liberty interest. To the contrary, such statements constitute mere opinion of the Plaintiff's work. Additionally, Kiser has not presented evidence that Mayor Lowe made public his alleged statement that Kiser encouraged questionable traffic stops. Third, even if such statements were made public, it was the Plaintiff, not the Defendants, who voluntarily contacted the media regarding Kiser's termination. Fourth, the Plaintiff has failed to present any evidence that the charges against him were false.

Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment on the Plaintiff's claim alleging a civil rights violation.

### C. Ohio Rev.Code § 121.22: Ohio's Sunshine Law

Kiser alleges that, at the September 6, 2000 meeting of the Marysville City Council, the Council Members adjourned into executive session to deliberate Kiser's termination of employment in violation of Ohio Rev.Code § 121.22(G)(1),[6] Ohio's Sun-

---

5. Mayor Lowe maintains that he never intended to accuse Kiser of making questionable traffic stops. To the contrary, he simply recorded what had been reported to him in the form of citizen complaints as a reminder to address those complaints with Kiser.

6. The Complaint actually cites to Ohio Rev. Code § 121.22(D)(1), but through their pleadings, the parties agree that the Plaintiff intended to assert a violation of § 121.22(G)(1).

shine Law. The Defendants contend that they are entitled to summary judgment with respect to this claim.

 Ohio's Sunshine Law provides that it is intended to be "liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." OHIO REV.CODE § 121.22(A). The law is intended to require governmental bodies to deliberate public issues in public. *City of Moraine v. Bd. of County Comm'rs of Montgomery County*, 67 Ohio St.2d 139, 423 N.E.2d 184, 188 (1981) (quoting lower court's ruling on the plaintiff's Sunshine Law claim). With respect to executive sessions, the statute provides, in pertinent part:

[T]he members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:

(1) To consider the ... dismissal ... of a public employee or official ..., unless the public employee, [or] official ... requests a public hearing.

OHIO REV.CODE § 121.22(G)(1).

The Court finds that the Marysville City Council was permitted to hold an executive session regarding the Plaintiff's employment because the Plaintiff never requested a public hearing as is required under the statute. The Court recognizes Kiser's argument that he was denied an opportunity to request a public hearing because, instead, he requested to attend the executive session, but was not informed that request was denied until after the session had concluded. Kiser, however, has cited no case law in support of his position that he is excused from actually requesting a public

hearing because he instead requested to attend the executive session.

 Moreover, even if Kiser had requested a public hearing, as an unclassified civil servant, he had no right to a public hearing on his termination, and the terms of the Sunshine Law did not grant him such a right. *See Matheny v. Frontier Local Bd. of Ed.*, 62 Ohio St.2d 362, 405 N.E.2d 1041, 1046 (1980) (holding that non-tenured teachers had no property right in their employment, and that § 121.22(G)(1) did not give them a right to a hearing on the issue of their continued employment). In considering § 121.22(G)(1), the *Matheny* court stated:

We believe that R.C. 121.22(G)(1) was intended to bring the other provisions of that section into conformity with existing statutes, such as R.C. 3319.16, which prescribe the procedure applicable to public employee termination actions. We do not believe that the words "unless the public employee ... requests a public hearing ..." were intended to grant the right to a hearing where none existed previously, as in the instance of contract considerations of non-tenured teachers.

*Id.* at 1045; *see Conner v. Village of Lakemore*, 48 Ohio App.3d 52, 547 N.E.2d 1230, 1231 (1988) (concluding that *Matheny* stands for the proposition that Ohio Rev. Code § 121.22(G)(1) permits private deliberations on a public employee's termination of employment where a hearing is not otherwise statutorily authorized). As an unclassified civil servant, Kiser was not entitled to a public hearing prior to his termination under any provision of the Ohio Revised Code, and, under *Matheny*, the Sunshine Law does not grant him that right where none existed previously. Thus, Kiser does not have a valid claim that the Defendants violated the Sunshine

Law by deliberating on his termination in executive session.

Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment on the Plaintiff's claim alleging a violation of Ohio Rev.Code § 121.22, Ohio's Sunshine Law.

### D. Slander

■ Kiser asserts that Lowe made various disparaging, untrue, false, and defamatory statements about him, including the statement that Kiser "encouraged questionable traffic stops."

■ When the plaintiff claiming defamation is a public official and the alleged defamatory statements relate to his official conduct, the plaintiff must demonstrate that the false statements were made with "actual malice." *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). "Actual malice" in this context is defined as publishing a statement with knowledge of its falsity or with reckless disregard for whether it is false or not. *Scott v. News–Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699, 704 (1986) (citing *New York Times*, 376 U.S. at 279, 84 S.Ct. 710). A public official can recover only upon a clear and convincing showing of actual malice. *Id.* (citations omitted).

■ As the Chief of Police, Kiser was a public official at the time that Mayor Lowe made the allegedly slanderous statements. *See Scott*, 496 N.E.2d at 702 (" '. . . Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and the *New York Times* malice standards

apply.' ") (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966)). Accordingly, the *New York Times* actual malice standard applies to his claim.

■ The Court finds that Kiser's slander claim must fail because the record is devoid of evidence that Mayor Lowe acted with actual malice when he stated that Kiser "encouraged questionable traffic stops." Although Kiser alleges that Mayor Lowe failed to verify his accusation or make investigations thereof, evidence of a failure to investigate the facts is insufficient to establish actual malice. *Scott*, 496 N.E.2d at 704. To satisfy the actual malice standard, the plaintiff must demonstrate that the defendant entertained serious doubts about the truth of his statement. *Id.* (citations omitted). Kiser, however, has presented no evidence tending to show that Mayor Lowe doubted the truth of his statement.[7]

Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment with respect to the Plaintiff's slander claim.

### E. Public Policy Claim

Finally, the Plaintiff alleges that the Defendants are liable for a violation of Ohio public policy based on their alleged violations of Ohio Rev.Code §§ 124.34, 733.35, and 733.36, and the public policies expressed therein.

As discussed above with respect to Kiser's due process claim, Kiser is not subject to the protections granted by Ohio Rev. Code §§ 124.34, 733.35, and 733.36 because he served as Chief of Police in the unclassified service pursuant to Marysville Ordinance. Therefore, his public policy claim based on an alleged violation of those statutes must fail.

---

7. As stated above, Mayor Lowe maintains that he never intended to accuse Kiser of making questionable traffic stops, but simply recorded what had been reported to him in the form of citizen complaints.

Accordingly, the Court **GRANTS** the Defendants' Motion for Summary Judgment with respect to the Plaintiff's public policy claim.

### F. Immunity

The Defendants have argued that they are entitled to immunity from the Plaintiff's state and federal claims. It is unnecessary for the Court to address these arguments, however, as the Court has found in favor of the Defendants on the merits of the Plaintiff's claims.

### V. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendants' Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**